**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| ROBERT ALLEN, M.D. and THE | ) | |
| CASTLE CLINIC, PLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| SIGNET DIAGNOSTIC CORPORATION d/b/a, | ) | |
| OXFORD BIOMEDICAL TECHNOLOGIES | ) | |
| | ) | |
| Defendant. | ) | |

---

## COMPLAINT

---

## INTRODUCTION

Plaintiffs, Robert Allen, M.D. and The Castle Clinic, PLC, file this Complaint seeking damages from the Defendant, Signet Diagnostic Corporation d/b/a Oxford Biomedical Technologies, and for cause of action would state as follows:

## PARTIES

1.      Robert Allen, M.D. is a resident of Tennessee and is the president and sole member of The Castle Clinic, PLC located at 1416 S. Roan Street, Johnson City, Washington County, Tennessee 37601.

2.      The Castle Clinic, PLC is a professional limited company organized and existing under Tennessee law pursuant to Tenn. Code Ann. § 48-248-101 *et seq.*, with a principal place of business located at 1416 Roan Street, Johnson City, Washington County, Tennessee 37601.

3.      The Defendant, Signet Diagnostic Corporation d/b/a Oxford Biomedical Technologies, is a for-profit Florida corporation with its principle address located at 3555 Fiscal

Court, Suites 8 & 9, Riviera Beach, Florida 33404 and may be served with process upon its

Registered Agent, Michael F. Hoffman, at the same address.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to hear this cause of action pursuant to 28 U.S.C. §

1331 (Federal question) for Plaintiffs' claims brought under 15 U.S.C. § 1125(a) ("Lanham

Act") and 18 U.S.C. § 1961, *et seq.* ("RICO"). Jurisdiction is proper as to Plaintiffs' state law

claims pursuant to 28 U.S.C. § 1331 (diversity jurisdiction) as there is diversity of citizenship

and the amount in controversy exceeds $75,000.00 and pursuant to 28 U.S.C. § 1367

(supplemental jurisdiction) as the state law claims are so related to the Federal question claims

that they form part of the same case or controversy.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as a substantial part of

the events giving rise to this claim occurred in the Eastern District of Tennessee, Greeneville

Division.

## FACTS

6.      Robert Allen, M.D. is the sole owner, member, and operator of The Castle Clinic,

PLC. He is a licensed physician in the state of Tennessee and operates the clinic to provide

healthcare for his patients, including management and treatment for allergies and irritable bowel

syndrome.

7.      To assist in the diagnosis and treatment of his patients with allergies or irritable

bowel syndrome, Dr. Allen began using the Mediator Release Test® (hereinafter "MRT").

2

8.     Defendant owns the patents (U.S. Patent #: 6114174, 6200815 B1) (Exhibit 1 – Oxford Biomedical Technologies Information) to the MRT test and its laboratory located in Riviera Beach, Florida is the sole location where the MRT test is performed/analyzed.

9.     Defendant runs a Clinical Laboratory (CLIA # 10D0914874, FL State License # 800010492) (Exhibit 1 - Oxford Biomedical Technologies Information) and is owned by Mark J. Pasula, 169 Orange Drive, Boynton Beach, Florida 33436 and Jerry A. Davis, 1208 Sunset Avenue, Perry, Georgia 31069.

10.    Defendant's officers include Mark J. Pasula as Director, Michael Hoffman as President/CEO, and Robert A. Souza as Vice President, Secretary, and Treasurer.

11.    Defendant represents that the MRT is a custom hematology test used to measure reactions with various immune mediator chemicals released into the blood in response to certain foods and chemicals. (Exhibit 2 – Excerpted from Signet's Health Care Licensing Application, Clinical Laboratories (Non-Waived)).

12.    Defendant conducts its testing at its facility on 3555 Fiscal Court, Suite 9, Riviera Beach, Florida 33404 and its operating hours are from 9:00 A.M. to 8:00 P.M. Tuesday-Friday. This facility only performs MRT tests.

13.    Defendant performs over 648,000 MRT tests per year. (Exhibit 2 – Excerpted from Signet's Health Care Licensing Application, Clinical Laboratories (Non-Waived)).

14.    Defendant represents that when submitting a claim to an insurance company for payment, the MRT is billed under American Medical Association, Current Procedural Terminology (CPT®) Code 83516 which is defined as an "immunoassay for analyte other than infectious agent antibody or infectious agent antigen, qualitative or semi-quantitative, multiple step method." (Exhibit 3 – MRT Insurance Verification Worksheet).

3

15.     BlueCross BlueShield of Tennessee (hereinafter "BCBST") defines the MRT as an "In Vitro Particle Size Measurement for Screening Hypersensitivity Reactions to Foods and Chemicals."

16.     The BCBST policy, in effect since May 1, 2004, classifies the MRT test as an investigational service.  (Exhibit 4 – BCBST Policy).

17.     Investigational medical services are by definition non-covered services pursuant to BCBST policy.

18.     Defendant produces and provides promotional materials representing that over 300 insurance companies have paid for the MRT test.  (Exhibit 7 – Literature for MRT test).

19.     Defendant's assertions regarding payment for the MRT tests are misleading representations of fact designed to confuse the consumer/medical provider regarding the approval and coverage of the MRT tests by insurance company medical policies.

20.     No insurance company policy has classified the MRT test used to identify food allergies as medically necessary.

21.     Insurance companies that do not identify the MRT by name have stated that in vitro hematology tests similar to the MRT are investigational and/or experimental, including medical policies from BlueCross BlueShield affiliates, Cigna's Medical Coverage Policy, United Healthcare, Tricare, and the Centers for Medicare and Medicaid Services National Coverage Determination.

22.     Twelve (12) other BlueCross BlueShield state medical policies and AETNA's national policy identify the MRT by name as an investigational and/or experimental medical service.   (Collective Exhibit 5 – Excerpts from polices which name the MRT test as investigational).

4

23.     All of the insurance companies' medical policies reviewed and referenced in Collective Exhibit 5 classify investigational services as not covered services, per se.

24.     Tennessee Code Annotated Section 56-7-110 permits retroactive recoupment within 18 months if an overpayment is identified.  (Exhibit 6 - Tennessee statute).

25.     Defendant's promotional materials offer to verify insurance coverage for the MRT test prior to having a medical provider submit a package to Defendant for testing.  (Exhibit 7 – Literature for MRT test).

26.     Defendant voluntarily offered to complete the "MRT Insurance Verification Form" to assure Plaintiffs that the MRT test was a covered service under a patient's medical insurance policy.

27.     Defendant owed a duty of care to Plaintiffs in performing the "MRT Insurance Verification Form" to assure payment through insurance coverage for the MRT test.

28.     Defendant made contact with BCBST and provided completed "MRT Insurance Verification Forms" for Plaintiffs' patients to document insurance coverage for the MRT test.

29.     Defendant created this protocol in order to induce Plaintiffs to order the MRT test and bill the service to BCBST for payment.

30.     Defendant owed a duty of care to Plaintiffs to provide complete and accurate information regarding whether a patient's medical insurance policy covered the MRT test.

31.     Defendant also owed a duty of care to BCBST to fully inform the BCBST staff of the type of test which was to be performed.

32.     As part of the MRT insurance verification process and prior to ordering the MRT for a patient, Plaintiffs supplied Defendant with patient information including providing the name of the patient's insurance company, BCBST.

5

33.     Once Defendant received this information, Defendant verified insurance coverage for the MRT by contacting BCBST to verbally verify coverage for the MRT test.

34.     Defendant provided Plaintiffs with a completed "MRT Insurance Verification Form" in effect representing that the MRT test was a covered service under the BCBST policy.

35.     The "MRT Insurance Verification Forms" submitted by Defendant includes the name of the Defendant employee who contacted a BCBST representative and confirmed that the CPT® Code used for billing the MRT test was covered under BCBST policies if the service was medically necessary. (Collective Exhibit 8 - MRT Forms with patient information redacted).

36.     By submitting this "completed" "MRT Insurance Verification Form," Defendant in effect represented to Plaintiffs that BCBST had verified the MRT test would be covered by BCBST.

37.     Defendant knew or should have known that BCBST classified the MRT test as an investigational service.

38.     Defendant failed to confirm BCBST insurance coverage for the MRT test, although Defendant supplied Plaintiffs with "completed" "MRT Insurance Verification Form" representing that the MRT test is a covered service pursuant to BCBST policy.

39.     Defendant knew that Plaintiffs would rely upon the "MRT Insurance Verification Form" provided to Plaintiffs as the basis for submitting claims for payment to BCBST.

40.     Defendant intentionally developed a scheme which was calculated to mislead Plaintiffs and BCBST in order to obtain payment for the MRT test which was at all times pertinent to this matter classified as investigational by BCBST and by 12 other insurance companies.

6

41.     This scheme was developed by Defendant to induce Plaintiffs to order and compensate Defendant for the MRT test without knowledge or with reckless disregard of the fact that the healthcare insurance industry considers the MRT test investigational.

42.     After the Plaintiffs received the "MRT Insurance Verification Form" from Defendant, a blood sample was taken from the patients identified on the form and sent to Defendant for analysis.

43.     The blood samples were sent to Defendant's laboratory using a common carrier service (typically Federal Express).

44.      Defendant completed the MRT test/analysis and sent the results of the MRT test to Plaintiffs also using the same common carrier service within 7 - 10 days.

45.     In reliance upon Defendant's representations of the "MRT Insurance Verification Form," Plaintiffs ordered the MRT test for 73 patients who had BCBST insurance.

46.     Plaintiffs had relied upon Defendant's representation that the MRT test was a covered service when they submitted these services for payment to BCBST.

47.     On December 9, 2011, BCBST initiated a post-payment audit of Plaintiffs' charts containing CPT® Code 83516 for the previous 18 months.

48.     In responding to this request, Plaintiffs provided to BCBST a number of completed "MRT Insurance Verification Forms" indicating that BCBST staff had verified MRT insurance for CPT® Code 83516.

49.     On February 1, 2012, BCBST issued the audit decision which denied payment for the MRT tests because the MRT is classified as investigational pursuant to BCBST's Medical Policy and on April 12, 2012, BCBST expanded the audit to deny additional claims.

50.     BCBST identified payments made to Plaintiffs for medical services associated with the MRT test as overpayments.

51.     BCBST initiated recoupment procedures to recover these identified overpayments for the services provided to the 73 patients who received MRT tests.

52.     Defendant's "MRT Insurance Verification Form" was designed as a calculated intentional misrepresentation whereby BCBST staff was asked about the CPT® Code 83516 rather than BCBST's policy for the MRT test.

53.     Plaintiffs relied upon the Defendant's actions, including but not limited to, the "MRT Insurance Verification Form," the advertisements about insurance company coverage of the MRT test, and the Defendant's knowledge and expertise in the field.

54.     To Plaintiffs' detriment, an overpayment in the amount of $134,148.22 was owed to BCBST.

55.     Plaintiffs appealed the audit findings through the BCBST Provider Dispute Resolution Process.  The appeal was denied and, as a result, Plaintiffs were required to pay $134,148.22 to BCBST for charges related to the MRT.  Plaintiffs have not yet paid BCBST and an Appeal is ongoing.

56.     To date, BCBST has refused to reverse their denial of the claims, based upon the medical policy which classifies the MRT as investigational.

## CAUSES OF ACTION

### Count I

**Lanham Act**
**(United States Code 15 U.S.C. § 1125(a))**

57.     The allegations of paragraphs 1 – 56 of the Facts are incorporated herein by reference.

8

58.     It is a violation of the Lanham Act for an individual to make a material false or misleading representation of fact in connection with the promotion or advertising of a service, in commerce, that is either likely to cause confusion or mistake as to the origin, association, or approval of the product with or by another, or the characteristic of the goods or services which results in an injury to the Plaintiffs.  15 U.S.C. § 1125(a).

59.     Defendant's promotional materials claim that over 300 insurance companies have paid for the MRT test, which is a misrepresentation of fact, made for the purpose of misleading the public by implying that over 300 insurance companies considered the MRT test a covered service.

60.     Defendant's statement that over 300 insurance companies had paid for the MRT test was made in commerce in an attempt to have individuals such as Plaintiffs order and pay for the MRT test with the expectation that a patient's insurance company would reimburse the Plaintiffs for the service.

61.     Defendant's statement that over 300 insurance companies had paid for the MRT test caused confusion regarding insurance companies' coverage of the MRT test.

62.     Defendant's statement in its promotional materials and Defendant's statements made directly to Plaintiffs offering insurance verification for the MRT test is a material false representation of fact in connection with its promotion of the MRT test.

63.     Defendant did not verify that a patient's insurance policy covers the MRT test.

64.     Defendant designed a form to misrepresent that it had verified insurance coverage for the MRT test while asking about CPT® Code 83516 and potential limitations or restrictions associated with that CPT® Code.

9

65.     Defendant failed to verify that the MRT test was covered by the BCBST policy although Defendant had voluntarily undertaken the duty to confirm coverage for the MRT test.

66.     Defendant's actions were calculated to induce Plaintiffs to rely upon the "MRT Insurance Verification Form" as evidence that BCBST staff had confirmed coverage of the MRT test.

67.     As a result of Defendant's actions, including but not limited to, false and misleading representations in connection with the promotion and/or advertising of the MRT test, Plaintiffs suffered damages, including but not limited to, BCBST seeking recoupment in the amount of $134,148.22, and any interest associated with the overpayment, attorney's fees, and costs to pursue this action.

68.     Plaintiffs are thus entitled to the remedies set forth in 15 U.S.C. § 1117, including the Defendant's profits, and any damages sustained by the Plaintiffs, and the costs associated with bringing this cause of action.

## COUNT II

### Racketeer Influenced and Corrupt Organizations (RICO)
### (18 U.S.C. § 1961, *et seq.*)

69.     The allegations of paragraphs 1 – 56 of the Facts are incorporated herein by reference.

70.     It is a prohibited activity to receive income derived from a pattern of racketeering activity. 18 U.S.C. § 1962(a).

71.     Racketeering activity includes any act that is indictable under the mail fraud statute 18 U.S.C. § 1341. 18 U.S.C. § 1961(1).

72. Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail (common carrier) "for the purpose of executing such scheme or artifice or attempting to do so." 18 U.S.C. § 1341.

73. Defendant developed a scheme to defraud medical providers and/or insurance carriers so that it receives compensation for the MRT test.

74. Specifically, Defendant has made false representations to Plaintiffs that the MRT test is a covered service under the BCBST policy. These false representations were made to induce Plaintiffs to order the MRT test so that Defendant could obtain money under these false pretenses.

75. To further this fraudulent scheme, Defendant utilized mail services to receive blood samples, payment for the MRT test and to mail results after the MRT test was completed.

76. These actions constitute an indictable offense under the mail fraud statute.

77. Because Defendant's action constitute an indictable offense under the mail fraud statute, Defendant has participated in racketeering activity pursuant to 18 U.S.C. § 1961.

78. Defendant has engaged in a pattern of racketeering activity as evidence by the fact that it proclaims that over 300 insurance companies have paid for this test and it performs over 648,00 MRT tests per year.

79. Defendant's actions constitute a prohibited activity under 18 U.S.C. § 1962 as Defendant received income derived from a pattern of its racketeering activity.

80. Plaintiffs are victims of this prohibited activity on the part of Defendant and have suffered damages including, but not limited to, BCBST seeking recoupment in the amount of $134,148.22 and any interest associated with the overpayment.

11

81.     As a result of Plaintiffs being victims of this racketeering activity prohibited by statute, Plaintiffs are entitled remedies pursuant to 18 U.S.C. § 1964, including but not limited to, treble damages, the costs of this suit, and reasonable attorney's fees.

## COUNT III

### INSURANCE FRAUD
**(Tennessee Code Annotated § 56-53-101, *et seq.*)**

82.     The allegations of paragraphs 1 – 56 of the Facts are incorporated herein by reference.

83.     Under Tennessee statute, Insurance Fraud is committed when a person intentionally or recklessly prepares and/or presents information that contains false representations as to any material fact regarding a claim for payment or benefit pursuant to any insurance policy.  Tenn. Code. Ann. §§ 56-53-102, 56-63-103.

84.     Additionally, Insurance Fraud is committed when a person intentionally or recklessly withholds or conceals a material fact regarding a claim for payment or benefit pursuant to any insurance policy.  Tenn. Code Ann.  §§ 56-53-102, 56-53-103.

85.     Defendant intentionally withheld and/or concealed information regarding whether BCBST classified the MRT test as an investigational service.

86.     Defendant knew or recklessly disregarded a material fact that BCBST classified the MRT test as an investigational service when it supplied Plaintiffs with its "MRT Insurance Verification Form" stating that the MRT test was a covered service.

87.     Defendant knew or should have known that Plaintiffs would use the information it provided Plaintiffs in its "MRT Insurance Verification Form" as part of a claim for payment pursuant to an insurance policy.

12

88.     Defendant's actions constitute insurance fraud pursuant to Tennessee Code Annotated § 56-53-101, *et seq.*

89.     As a result of this fraudulent action by the Defendant, Plaintiffs have suffered damages, including but not limited to, BCBST seeking recoupment in the amount of $134,148.22 and any interest associated with the overpayment, attorney's fees, and costs to pursue this action.

90.     Plaintiffs are thus entitled to all remedies pursuant to Tenn. Code Ann. § 56-53-107, including but not limited to, all profit, benefit, and compensation Defendant received as a result of its fraudulent actions, economic damages, investigative fees, and reasonable attorney's fees.

91.     Defendant's violations of Tennessee's Insurance Fraud statute was part of a pattern or practice that warrant treble damages for this action pursuant to Tenn. Code Ann. § 56-53-107(c).

## COUNT IV

**Tennessee Consumer Protection Act**
**(Tennessee Code Annotated § 47-18-101, *et seq.*)**

92.     The allegations of paragraphs 1 – 56 of the Facts are incorporated herein by reference.

93.     It is a violation of the Tennessee Consumer Protection Act for a person to use unfair or deceptive trade practices to affect the conduct of any trade or commerce.  Tenn. Code Ann. § 104(a).

94.     Defendant violates the Tennessee Consumer Protection Act if it intentionally and/or knowingly is engaging in unfair and deceptive acts including:

        a.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services.  Tenn. Code Ann. § 47-18-104(b)(2).

13

b. Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, certification by, another. Tenn. Code Ann. § 47-18-104(b)(3).

c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. Tenn. Code Ann. § 47-18-104(b)(5).

d. Representing that goods or services are of a particular standard, quality or grade, or that goods are of particular style or model, if they are of another. Tenn. Code Ann. § 47-18-104(b)(7).

95.     Defendant used deceptive trade practices by completing and submitting the "MRT Insurance Verification Form" for Plaintiffs' patients representing that Plaintiffs' patients had insurance coverage through BCBST for the MRT test.

96.     Defendant's deceptive trade practices affected commerce as it induced Plaintiffs to order the MRT test from Defendant and seek payments from BCBST.

97.     Defendant's use of the "MRT Insurance Verification Form" caused confusion and/or misunderstandings regarding the approval of using the MRT test pursuant to the BCBST policy.

98.     Defendant used deceptive acts when it represented that the MRT test was a covered medical service under the BCBST policy when it submitted its "MRT Insurance Verification Form" to Plaintiffs, in effect representing that Defendant's MRT test/service was approved by BCBST when no such approval existed.

99.     Plaintiffs have suffered an ascertainable loss of money as a result of Defendant's unfair and/or deceptive acts or practices, including but not limited to, BCBST seeking recoupment in the amount of $134,148.22 and any interest associated with the overpayment, attorney's fees, and costs associated with this action.

14

100. Defendant's unfair and/or deceptive acts or practices were willful or knowing violations of the Tennessee Consumer Protection Act.

101. As a result of Defendant's willful or knowing unfair and/or deceptive acts or practices, Plaintiffs are entitled to remedies pursuant to Tenn. Code Ann. § 47-18-109, including but not limited to, treble damages and reasonable attorney's fees.

## COUNT V

### Negligence
### (Common Law*)

102. Common law negligence occurs when (1) there is a duty of care owed by the Defendant to the Plaintiffs; (2) conduct by the Defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

103. Defendant volunteered to perform the following duty: to provide Plaintiffs with complete and accurate information regarding MRT insurance verification to confirm that the MRT test was a covered medical service pursuant to BCBST's medical policy.

104. Defendant breached its duty of care owed to Plaintiffs when it represented to Plaintiffs that the MRT test was a covered service through its submission of the "MRT Insurance Verification Form."

105. Defendant breached its duty of care owed to Plaintiffs when it failed to identify that the MRT test was classified as an investigational medical service pursuant to BCBST's medical policy and therefore not a covered service.

106. As a result of Defendant's breach of duty, Plaintiffs suffered a loss, including but not limited to, BCBST seeking recoupment in the amount of $134,148.22 and any interest associated with the overpayment, attorney's fees, and costs associated with this action.

15

107.    Additionally, Defendant's negligence was the legal and/or proximate cause of Plaintiffs' loss, including but not limited to, BCBST seeking recoupment in the amount of $134,148.22 and any interest associated with the overpayment, attorney's fees, and costs associated with this action.

WHEREFORE, Plaintiffs pray for the following relief:

1.    For compensatory damages for the amounts that must be repaid to BCBST, including but not limited to, the overpayment identified by BCBST in the amount of $134,148.22 and any interest associated with the overpayment, attorney's fees, and costs associated with this action;

2.    For all profit, benefit, and compensation Defendant received as a result of its fraudulent actions pursuant to the Lanham Act and Insurance Fraud;

3.    For an award of treble damages pursuant to the Tennessee Consumer Protection Act, RICO Act, and Insurance Fraud;

4.    For costs associated with bringing this action, including reasonable attorney's fees;

5.    For pre-judgment interest; and

6.    For such further relief, both general and special, at law or in equity, to which Plaintiffs are justly entitled.

## JURY DEMAND

Plaintiffs demand a **JURY** to try this cause.

Respectfully submitted this 31st day of January, 2013.

<div style="margin-left:45%">

s/Jason Long

Diana L. Gustin (BPR # 010245)
Jason Long (BPR # 018088)
Brian Z. Schott (BPR # 029379)
Counsel for Plaintiffs Robert Allen, M.D. &
The Castle Clinic, PLC
LONDON & AMBURN, P.C.
607 Market Street, Suite 900
Knoxville, Tennessee 37902
(865) 637-0203

</div>